# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 02-CV-2438 (JFB) (LB)

---

JUVONDI R. PENDER,

Plaintiff,

VERSUS

STATE OF NEW YORK OFFICE OF MENTAL RETARDATION
AND DEVELOPMENTAL DISABILITIES,
BROOKLYN DEVELOPMENTAL DISABILITIES SERVICES OFFICE,

Defendants.

---

MEMORANDUM AND ORDER
July 18, 2006

---

JOSEPH F. BIANCO, District Judge:

Juvondi R. Pender, plaintiff *pro se*, brought the instant case, alleging employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Specifically, plaintiff alleges that defendants discriminated against him based on his race in their failure to promote him and their decision to terminate him, and also alleges that defendants failed to reasonably accommodate his disabilities, which plaintiff alleges he had during his employment. Defendants move for summary judgment, pursuant to Fed. R. Civ. P. 56, on both claims. For the reasons stated below, the Court grants defendant's motion for summary judgment.

I. BACKGROUND

A. Factual Background

The following facts are undisputed, unless otherwise indicated.[1] Plaintiff, an African-

---

[1] Defendants submitted a statement, pursuant to Local Civil Rule 56.1, which asserts material facts which they claim are undisputed in this case. Defendants also complied with Local Civil Rule 56.2 by providing notice to plaintiff *pro se* that he is not entitled to simply rely on allegations in his complaint, but is required to submit evidence, including sworn affidavits, witness statements and documents to respond to the motion for summary judgment, pursuant to Fed. R. Civ. P. 56(e). This action provided actual notice to plaintiff of the consequences of non-compliance with the requirements of Fed. R. Civ. P. 56. *See, e. g., Irby*

*v. N.Y. Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56 . . . . [E]ither the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56 . . . . In the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."). Although the plaintiff did not specifically respond to defendants' Rule 56.1 Statement in the precise form specified by the local rule, the Court overlooks this technical defect and reads plaintiff's responses liberally as he is *pro se*, and considers factual assertions made by his affidavit with accompanying exhibits as contesting defendants' statement of material undisputed facts, where his statements or evidence conflicts. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 63, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (citations omitted); *see, e.g., Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Therefore, where the Court cites to defendant's Rule 56.1 Statement, plaintiff has not contested that fact in any of his papers. *See, e.g., Pierre-Antoine v. City of New York*, No. 04-CV-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006) (deeming facts in defendants' Rule 56.1 statement as admitted by *pro se* plaintiff, where plaintiff was provided notice of failing to properly respond to summary judgment motion under Local Civil Rule 56.2 and the court's review of record did not reveal that there was a genuine issue of material fact); *Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-CV-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005) (deeming defendants' factual assertions

American male, was employed as a Motor Vehicle Operator ("MVO") by defendant Brooklyn Developmental Disabilities Services Office ("BDC") from 1995 to 2002. (*See* Defs.' Rule 56.1 Statement ("56.1 Statement") ¶ 1.) In that capacity, plaintiff testified that he transported staff and clients. (*See* Deposition of Juvondi R. Pender ("Pender Dep.") at 55.) According to the written job requirements promulgated by the New York State Department of Civil Service, an MVO is required, *inter alia*, to be able to operate motor vehicles as required, and also to have the "[a]bility to lift and carry crates, cartons, boxes and other cargo onto and off of transport vehicles." (*See* Declaration of Marc A. Konowitz ("Konowitz Decl."), Ex. F.)

Plaintiff was injured by two separate work-related accidents. First, on September 21, 1999, he fell from the back of a vehicle while unloading food carts because another MVO began to move the truck while plaintiff was still standing on the back of it. (*Id.* ¶ 28.) After the accident, the BDC offered plaintiff a light-duty schedule as an MVO so that he could continue working. (*See id.* ¶ 30; *see also* Declaration of Judith McGourty-Graham ("McGourty-Graham Decl.") ¶ 7.) Plaintiff did not return to work on his doctor's advice, and filed a Worker's Compensation Claim. (*See* McGourty-Graham Decl. ¶ 8; *see also* 56.1 Statement ¶ 31.) He returned to work on September 18, 2000, but was injured in an unwitnessed accident within days of his return, while trying to lift a wheelchair-bound client into a van. (*See* 56.1 Statement ¶ 32.) Plaintiff left work and again filed for Worker's Compensation benefits. (*See*

admitted where *pro se* plaintiff was provided with notice under Local Civil Rule 56.2 and where plaintiff did not submit evidence controverting those factual assertions).

McGourty-Graham Decl. ¶ 8.)

From these accidents, plaintiff claims that he sustained injuries to his head, neck, back, shoulders and lower extremities, and claims that he is now suffering from hearing and dental problems. (*See* 56.1 Statement ¶ 33.) Plaintiff never requested any accommodation for his disability during the time that he was employed at BDC. (*See* McGourty-Graham Decl. ¶ 9.)[2] Although plaintiff was offered an MVO light-duty schedule as an accommodation, he maintained that he could not perform the duties required of an MVO. (*See* 56.1 Statement ¶ 37.)

In November 2000, the BDC received a letter from Dr. Kenneth Falvo, an independent consultant working with the State Insurance Fund. (*See* McGourty-Graham Decl., Ex. F. at 3.) Dr. Falvo opined that plaintiff was not disabled, and could return to work in "a full-time capacity as a motor vehicle operator." (*See id.*) By letter dated November 30, 2000, the BDC ordered plaintiff to return to work, or to produce a private physician's statement that he was unable to perform his duties for medical reasons. (*See id.*) Plaintiff submitted such a letter, dated December 4, 2000, which provided an opinion from a chiropractor that he could not return to work until further notice. (*See id; see also* Pender Dep. at 184-85.)

Because of the conflicting opinions, BDC sought to schedule plaintiff for a medical examination with Employee Health Service in Albany, New York, pursuant to civil service rules and the parties' collective bargaining agreement. (*See* McGourty Graham Decl., Ex. F. at 3.) The examination was intended to serve as a "tie-breaker" to determine whether plaintiff was able to return to work. (*See id.*) Plaintiff failed to report for five separate scheduled appointments.[3] (*See id.* at 3-5.)

As a result of plaintiff's repeated failure to report for the appointments with Employee Health Service in Albany, the BDC sought termination of plaintiff. The BDC brought charges of insubordination before an arbitrator, pursuant to the parties' collective bargaining agreement. (*See id.* at 2.) As part of its petition, the BDC noted the fact that Pender had previously been found guilty of threatening a co-worker. Plaintiff, represented by his union, the Civil Service Employees Association, argued that he was unable to report to the appointments because he did not have sufficient funds to travel to Albany and it was difficult for him to drive for long periods of time. (*See id.* at 6.) Plaintiff argued that the BDC should have either arranged for his travel, or scheduled an appointment at a more convenient location. (*See id.*) The arbitrator rejected this argument, highlighting the fact that plaintiff never communicated an excuse to the BDC

---

[2] Apart from the affidavit of the BDC's personnel director, which attests to the fact that plaintiff never requested any disability accommodation, plaintiff admitted during his deposition that his physician had never cleared him for any accommodation that would have allowed him to continue to work as an MVO. (*See* 56.1 Statement, ¶ 39; *see also* Pender Dep. at 240.) Further, plaintiff never responded to defendants' discovery request that he produce evidence that he requested an accommodation from defendants. (*See id.* ¶ 41.)

[3] On one occasion, the third scheduled appointment, plaintiff traveled to Albany but reported over three hours late for his appointment. (*See id.* at 4.) Plaintiff could not be examined at that time because the relevant personnel had already left for the day.

3

regarding his failure to appear for the appointments. (*See id.*) The arbitrator concluded that plaintiff was guilty of multiple counts of insubordination, and recommended termination, by opinion dated September 20, 2002. (*See id.* at 7.) Plaintiff was subsequently terminated by the BDC.

B. Procedural History

As a result of his termination from BDC, plaintiff filed formal administrative complaints with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race and disability. The EEOC subsequently issued right-to-sue letters, which authorized plaintiff to file the instant lawsuit, alleging, *inter alia*, violations of Title VII and the ADA.

By Order dated July 16, 2002, the Honorable Raymond J. Dearie dismissed plaintiff's Amended Complaint, finding, *inter alia*, that: (1) plaintiff failed to exhaust his administrative remedies on his Title VII claim; and (2) plaintiff was barred from seeking monetary damages under the ADA against the defendants because they are state entities, and such liability is barred by the Eleventh Amendment. By Order dated May 18, 2003, the United States Court of Appeals for the Second Circuit vacated the judgment, finding that: (1) plaintiff did, in fact, exhaust his administrative remedies on his Title VII claim; and (2) plaintiff has a viable claim against the defendants under the ADA, insofar as the Amended Complaint seeks injunctive relief. Accordingly, the Second Circuit remanded the Title VII claim, and the ADA claim, insofar as it is limited to injunctive relief, for further proceedings.

On July 30, 2003, this case was reassigned to the Honorable Nicholas G. Garaufis. It was subsequently reassigned to the undersigned on March 23, 2006.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (noting that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As the Supreme Court stated in

*Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. DISCUSSION

A. Race Discrimination Claim

Plaintiff claims that defendants discriminated against him on the basis of race. Specifically, he claims that this unlawful discrimination was the animating force behind a number of actions taken against him by defendants, including his termination and defendants' failure to promote him.

Because plaintiff presents no direct evidence of discriminatory treatment based on his race, the Court reviews his claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.E.2d 668 (1973). To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

5

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.E.2d 433 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101, 123 S.Ct. 2148, 156 L.E.2d 84 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *see also Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-208 (S.D.N.Y. 2000).[4]

Defendants argue that plaintiff cannot establish a *prima facie* case because he cannot demonstrate that he was terminated under circumstances giving rise to an inference of discrimination. However, for the purposes of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case. Here, the defendants have offered a legitimate, non-discriminatory reason for plaintiff's discharge–the charges of insubordination, which were upheld by the arbitrator. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race discrimination by examining each parties' evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.

---

[4] As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove–particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

6

1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

In the instant case, the Court finds that summary judgment is warranted because the record contains no evidence from which a reasonable jury could infer that plaintiff was terminated or denied promotions under circumstances giving rise to racial discrimination. Plaintiff merely offers conclusory allegations of discrimination, which is insufficient to allow a Title VII case to survive summary judgment and proceed to trial.[5] *See Forsyth v. Fed'n Employment and Guidance Serv.,* 409 F.3d 565, 573-74 (2d Cir. 2005); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997) ("[A] plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *see also Turner v. Davidson/Gilmour Pipe Supply,* No. 04-CV-3278 (ARR), 2006 WL 1652613, at *9 (E.D.N.Y. June 14, 2006) (concluding that plaintiff's conclusory allegations of discrimination were insufficient to sustain a Title VII claim).

Summary judgment is particularly appropriate here because defendants have offered a legitimate, non-discriminatory reason for plaintiff's discharge–namely, the charges of insubordination which were upheld by an arbitrator–and plaintiff's conclusory allegations of discrimination are not sufficient to allow a finder of fact to conclude that the explanation was merely a pretext for discrimination. *See Maqsood v. Bell Sec., Inc.,* No. 03-CV-8717 (RSW), 2006 WL 1380259, at *5 (S.D.N.Y. May 22, 2006) ("[W]here, as here, [plaintiff's] claim is based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct, summary judgment is appropriate.") (internal citations, quotations, and alterations omitted); *Singleton v. Fed. Bureau of Prisons*, No. 04-CV-1526 (CPS) 2006 WL 1329712, at *4 (E.D.N.Y. May 16, 2006) ("[M]ere conclusory allegations of discrimination by plaintiff will not prevail when defendant has provided convincing evidence to explain its conduct.") (citing *Stern*, 131 F.3d at 312).

Similarly, plaintiff's failure-to-promote claim also suffers from being supported solely by conclusory allegations. Although plaintiff claims in his opposition papers that he believes an unspecified non-black person has been promoted, there is no evidentiary support for this allegation. (*See* Pl.'s Mem. at 5.) In fact, at his deposition, plaintiff could not specifically name a single, less-qualified person of any race that had been promoted instead of him. (*See* Pender Dep. at 73-75.)

---

[5] Throughout his deposition, plaintiff was questioned as to his basis for alleging that adverse actions taken against him by his employer were based on race, and he repeatedly answered with broad conclusory statements that the actions were racially-motivated. (*See* Pender Dep. at 81, 83-84, 85.) On several occasions, plaintiff claimed that he believed that he was being discriminated against based on a particularized, personal expertise with racism. For example, plaintiff claimed that his experience growing up in North Carolina, where he got "to see water fountains listing whites only and water fountains listing coloreds only" has allowed him to "know when there is discrimination in the air automatically." (Pender Dep. at 22.) Later, he claimed that he could "recognize [racism] more than anyone else because I know what it's about . . . there's one thing I know, I know a person, man or woman, when they are abusive and overreaching and their discriminatory mannerisms." (Pender Dep. at 50.)

7

Alternatively, plaintiff's failure-to-promote claim is defective because he has failed to provide the Court with evidence that he applied for specific positions for which he was qualified and was rejected. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("We read *McDonnell Douglas* and *Burdine* generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion. This general mandate ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer."); *see McCalla v. SUNY Downstate Med. Ctr.*, No. 03-CV-2633 (JFB), 2006 WL 1662635, at *7 (E.D.N.Y. June 8, 2006) (dismissing failure to promote claim where plaintiff failed to allege that he applied for or was qualified for an actual position). Whereas here defendants submitted evidence that plaintiff never applied for any promotion to any position at BDC during his period of employment, plaintiff was unable to specify a single promotion which he allegedly sought when it was inquired from him at his deposition, and only stated in a conclusory fashion that he applied for every posted promotion.[6] (*See* McGourty-Graham Decl. ¶ 5; *see also* Pender Dep. at 55, 58-65.) Plaintiff has not pointed to, and the Court has not discovered, in its own independent review, any evidence that would support an inference that plaintiff's termination or defendants' failure to promote him were motivated by

---

[6] Plaintiff attached a number of documents regarding jobs to his memorandum in opposition to defendants' motion for summary judgment, but none of them competently depict a job at one of the defendant organizations for which there exists any record evidence that plaintiff is able to perform. First, plaintiff attached a handwritten note, informing an unspecified party that he is sending a resume in reference to an MVO position. (Pl.'s Mem. at 14.) This document is plainly insufficient to establish plaintiff's failure-to-promote claim as it was dated October 1, 2002, after his termination from defendants' employ. Another document is a posting for the position of "Supervising Motor Vehicle Representative," but it specifically states that it is only open to qualified employees of the New York State Department of Motor Vehicles, not for those in the employ of defendants. (*See id.* at 58.) Plaintiff also offers a posting for a job as a legal assistant, but there is no indication that such job is with the defendants, and plaintiff has not even alleged that he has the requisite qualifications, including an associate's or bachelor's degree in paralegal studies. (*See id.* at 59.) Another posting is for a job as a "Motor Equipment Storekeeper," but that position is within the New York State Department of Transportation and the New York State Officer of Parks, Recreation and Historic Preservation, not with the defendants. (*See id.* at 60.) Plaintiff offers a rejection letter for an application to become a "Plant Utilities Engineer Apprentice," which notes that he does not have the appropriate education or experience for such a position, and nothing in the record suggests otherwise. (*See id.* at 61.) Another rejection letter for the position of "Consumer Frauds Rep. Trainee 1," contains no indication that the position is with defendants, and reflects that plaintiff was rejected for submitting his application after the posted deadline. (*See id.* at 62.) Plaintiff also submitted postings for jobs with the U.S. Customs Service and the Mass Transit Authority, both of which are irrelevant to plaintiff's failure-to-promote claim, as the positions are not with the defendants. (*See id.* at 63-64.) Plaintiff only submitted one posting that indicated that the advertised position was with defendant BDC, but that posting advertises the same position and pay grade that plaintiff was already employed at, and thus does not represent a promotion. (*See id.* at 70.)

unlawful discrimination based on race.[7]

Moreover, it should be noted that plaintiff's own record testimony undermines his claim that any adverse treatment he received at the hands of his employer was based on his race. On several occasions during his deposition, plaintiff remarked that the factor which determined how employees were treated at BDC was whether or not they were members of a particular clique, that consisted of employees who socialized together in gambling and drinking activities, and abused drugs.[8] Plaintiff admitted that some of the members of this clique that received preferential treatment included African-Americans. (Pender Dep. at 323-24.) Plaintiff's evidence may indicate that he was discriminated against based on his choice of social circles and his objections to what he perceived to be the immoral extra-curricular activities of his co-workers, but such discrimination is not based on race and does not form the basis of a cause of action under Title VII.

In sum, plaintiff has failed to produce any evidence that would allow a reasonable jury to draw an inference of race discrimination. Plaintiff solely makes conclusory allegations that the alleged adverse employment actions were impermissibly based on race, which are plainly insufficient to allow plaintiff's claim to survive the instant motion for summary judgment.

B. ADA Claim

Plaintiff claims that defendant discriminated against him on the basis of his disability. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." *Rodal v. Anesthesia Group of Onondoga, P.C.,* 369 F.3d 113, 122 (2d Cir. 2004) (quoting 42 U.S.C. § 12112(a)). Plaintiff does not specifically lay out in his complaint or his

---

[7] Plaintiff's Amended Complaint also decries other actions taken by defendants, including their failure to adequately investigate a 1999 incident in which plaintiff was assaulted by an unknown person, and also an incident in which a co-worker poured gasoline on him. (Amended Compl. ¶¶ 10-12, 21.) The Court has not been provided with, nor is able to discern, any evidentiary basis for the claim regarding the alleged 1999 assault in the record, and plaintiff only briefly mentioned the gasoline incident in his deposition. (*See* Pender Dep. at 101-09.) To the extent that plaintiff claims that the gasoline incident was the result of race discrimination, his claim fails because it suffers from the same defect as his other race discrimination claims–the only evidence plaintiff offers that it was caused by race discrimination is his own conclusory statements. (*See id.* at 103, 107.) In its own review of the record, the Court was unable to find any other competent evidence from which a reasonable jury could possibly infer race discrimination with respect to defendants' alleged failure to investigate these incidents.

[8] When plaintiff was asked whether defendants held "dark skinned" people to a different standard, plaintiff responded: "[t]here's a different standard for anybody that's not a member of that clique and the clique consisted of the illegal gambling, the druggies, the alcoholics, you had that running, you had the safety clique, the friendship, the long endurance established personnel who have been there over 25 years, they are just marking time." (Pender Dep. at 323.) Previously, plaintiff noted that one of the reasons that he felt that he was not promoted, along with his conclusory allegation of race discrimination, was the fact that he was not a member of this same clique. (*See id.* at 76-77.)

9

motion papers the nature of his disability, or the accommodation which he seeks under the ADA. Broadly reviewing all of the evidence in the case, particularly his deposition testimony, it appears that the *pro se* plaintiff's specific disability claim is that the injuries he assumed in the course of his employment prevented him from being able to continue working as an MVO because his injuries made it difficult for him to drive and impossible to lift heavy objects. (*See* Pender Dep. at 240-42.) Plaintiff asserts that defendant should have accommodated him by promoting him to a supervisory position, where he would not be required to drive or lift. (*See* Pender Dep. at 154.)

To establish a *prima facie* case of discriminatory discharge under the ADA, an employee has the burden to demonstrate that: "1) he was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to demonstrate that the employer's proposed accommodation would have resulted in undue hardship." *Id.*

Plaintiff cannot make a successful *prima facie* case because no reasonable jury could find that he was a "qualified individual with a disability" within the meaning of the ADA. Under the statute, a plaintiff bears the burden of proving that he or she is a qualified individual with a disability. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805, 119 S.Ct. 1597, 1603, 143 L.E.2d 966 (1999). A "[q]ualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In the instant case, although defendant attempted to provide plaintiff with an accommodation for his disability by offering him a light-duty schedule as an MVO, defendant insisted that he was unable to work *at all* as an MVO at the time of his termination.[9] Since plaintiff admits that no reasonable accommodation would have allowed him to perform his job, his ADA claim fails. *See, e.g., Scott v. Mem'l Sloan-Kettering Cancer Ctr.,* 190 F. Supp. 2d 590, 597 (S.D.N.Y. 2002) (dismissing ADA claim on summary judgment where employee admitted that her disability rendered it "impossible" for her to perform her job at the time at which she was terminated); *Muller v. First Unum Life Ins. Co.,* 90 F. Supp. 2d 204, 208 (N.D.N.Y. 2000) ("[W]here an individual claims that he/she is totally disabled and unable to perform any of the essential functions of his/her job, he/she is not a [qualified individual with a disability] under the ADA."); *Bril v. Dean Witter, Discover & Co.,* 986 F. Supp. 171, 175 (S.D.N.Y. 1997) (holding that plaintiff "who admittedly was totally disabled at the time her benefits were discontinued" was not a qualified person with a disability, and therefore, could not sue her employer under the ADA); *Violette v. Int'l Bus. Machines Corp.,* 962 F. Supp. 446, 449 (D. Vt. 1996), *aff'd*, 116 F.3d 446 (2d Cir.

---

[9] Plaintiff admitted at his deposition that his disability still completely prevents him from working as an MVO. (*See* Pender Dep. at 240-42.) Plaintiff himself highlighted that the fact that the federal government has awarded him Social Security benefits demonstrates the fact that he is completely disabled, and specifically unable to work as an MVO. (*See id.* at 241-42.)

1997) ("Because Plaintiff cannot perform the essential functions of the job he held, he is not entitled to the relief provided for 'qualified individuals' under the ADA."); *cf. Parker,* 204 F.3d at 335-36 (reversing grant of summary judgment where court determined that there was a disputed issue of fact as to whether plaintiff was capable of performing his job with reasonable accommodation at the time that he was terminated).

Moreover, plaintiff's claim fails because the record does not demonstrate that he actually requested a particular accommodation. *See Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 261 (1st Cir. 2001); *see also Sidor v. Reno*, No. 95-CV-9588 (KMW), 1997 WL 582846, at *6 (S.D.N.Y. Sept. 19, 1997) ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.") (quoting *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir. 1996)). Defendant submitted evidence that plaintiff never requested a particular accommodation for his disability, and plaintiff did not offer any evidence in his favor from which a reasonable finder of fact could determine that he made such a request. Although plaintiff's deposition testimony indicates that he believes that he should have been promoted to a supervisory position in order to accommodate his disability, there is no evidence in the record that he made any request for such an accommodation to defendant.[10]

---

[10] The Court could also strain to interpret plaintiff's deposition testimony as suggesting that his ADA requested accommodation was to have defendants schedule his appointment with Employee Health Service at a more convenient location or provide him with alternative means to travel to Albany. However, the Court finds that no reasonable jury could find that plaintiff needed an accommodation to satisfy this one-time condition of employment, given the uncontroverted evidence that plaintiff was successfully able to make the trip to Albany on at least one occasion, albeit hours late for the appointment. Indeed, there are many ways to get to Albany, and defendant generously offered plaintiff five separate opportunities, scheduled at plaintiff's convenience, for him to make the required appearance. Finally, it should be noted that if plaintiff was unable to make any timely trip to Albany due to his alleged disability, such evidence would be further proof that no reasonable accommodation could have been made to allow him to operate as an MVO.

Even if plaintiff had made a request for his disability to be accommodated through a promotion, it would be insufficient to maintain a claim under the ADA. Although a plaintiff may bring a claim alleging that he or she was discriminated against based on disability in being denied a promotion for which he or she applied and was qualified for, with or without the implementation of reasonable accommodations, *see, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208 (2d Cir. 2001), an employer has no generalized duty under the ADA to promote a disabled employee as an accommodation itself. *See Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1256 (11th Cir. 2001) (noting that the ADA does not require that an employer promote a disabled employee as a reasonable accommodation); *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000) ("Notably, promotion is not required; an employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available.") (internal quotation and alterations

omitted); *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1176 (10th Cir. 1999) ("[The ADA] is not a statute giving rise to a right to advancement. Thus, the only positions that need to be considered for a reassignment are those that are not promotions."); *Malabara v. Chi. Tribune Co.,* 149 F.3d 690, 699 (7th Cir. 1998) ("[A]n employer does not have to accommodate a disabled employee by promoting him or her to a higher level position."); *Connolly v. Bidermann Indus. U.S.A., Inc.,* 56 F. Supp. 2d 360, 365 ("[A]n employer is not required to promote an individual with a disability as an accommodation."); 29 C.F.R. pt. 1630, App. § 1630.2(o) ("[A]n employer is not required to promote an individual with a disability as an accommodation."); EEOC GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT, at 40 (1999) ("Reassignment does not include giving an employee a promotion. Thus, an employee must compete for any vacant position that would constitute a promotion."). A contrary holding that an employer is required to promote an employee as an accommodation, where he is no longer able to perform his current position, would place disabled persons on a higher playing field than non-disabled persons, contrary to the objectives of the ADA. *Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) ("The ADA serves the important function of ensuring that people with disabilities are given the same opportunities and are able to enjoy the same benefits as other Americans. The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally.") (quoting *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 122 S.Ct. 1516, 1521, 152 L.Ed.2d 589 (2002)).

Defendants were not required to promote plaintiff as an accommodation under the ADA.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in its entirety and the complaint is dismissed. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 18, 2006
Central Islip, New York

\* \* \*

The plaintiff appeared *pro se* in this action. The attorneys for the defendants are Eliot Spitzer, Esq., Attorney General of the State of New York, by Marc A. Konowitz, Esq., Assistant Attorney General, 120 Broadway, New York, New York 10271.